UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

FRANCIS H. WHITE III,

      **Plaintiff,**

v.                                    No. 14-CV-429 MCA/KK

JAMIE L. LAWRENCE,
BRENDA LAWRENCE,
LEGACY MORTGAGE, LLC.,
and GABE JOSEPH,

      **Defendants.**

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on *Jamie Lawrence and Brenda Lawrence's Motion to Dismiss*. [Doc. 18] The Court, having considered the parties submissions and the relevant case law and otherwise being fully informed in the premises, hereby **DENIES** the Motion.

## BACKGROUND

According to the Amended Complaint, Plaintiff, a citizen of Minnesota [Doc. 7, ¶ 1], intended to sell a house he owned[1] in Southwest Albuquerque. [Doc. 7, ¶¶ 6, 8-9, 16] However, before he listed the house for sale, he verbally agreed to let Defendants Jamie and Brenda Lawrence, citizens of New Mexico, reside in the home from around December 31, 2011 through May 31, 2012. [Doc. 7, ¶¶ 2-3, 6, 8-9] The agreement between Plaintiff and the Lawrences was that the Lawrences could stay in the house

---

[1] Plaintiff owned this home in joint tenancy with another citizen of Minnesota who is not a party to this lawsuit. [Doc. 7, ¶ 8]

without paying rent or other monetary compensation on the condition that they made various repairs and the property was in acceptable condition to be listed for sale on April 1, 2012.  [Doc. 7, ¶¶ 8-9]  On March 14, 2012, Jamie Lawrence proposed, by a handwritten document, to extend the existing agreement to allow him and Brenda Lawrence to stay in the house until June 1, 2012 if the property had been sold or to the end of July, 2012 if it had not been sold.  [Doc. 7, ¶ 14]  Plaintiff did not accept this offer. [Doc. 7, ¶ 14]

On May 1, 2012, Jamie Lawrence made an offer of a real estate contract to purchase the home for $143,000 with certain contingencies, including that Plaintiff contribute $3,000 toward the buyers' closing costs.  [Doc. 7, ¶ 17]  Plaintiff made a counter-offer on May 2, 2012, which contained the provision that "Buyer . . . provide Seller with a preapproval letter within 72 hours of acceptance."  [Doc. 7, ¶¶ 18-19]  Both Jamie Lawrence and Brenda Lawrence accepted the counter-offer and entered into the Purchase Agreement.  [Doc. 7, ¶ 18, 24]

Defendant Gabe Joseph[2] was an employee and agent of Defendant Legacy Mortgage, LLC, and both are alleged to be citizens of New Mexico.  [Doc. 7, ¶¶ 4, 5, 20] Mr. Joseph checked the credit of Defendants Jamie and Brenda Lawrence, and "the requests of Defendants Jamie Lawrence and Brenda Lawrence for credit in order to purchase the [property] were declined on May 2, 2012."  [Doc. 7, ¶¶ 20-21]  Nonetheless, "on May 3, 2012, Defendant Gabe [Joseph] . . . issued a pre-approval letter for the

---

[2] The Complaint variously refers to Mr. Joseph and Mr. Johnson.  [Doc. 7, ¶¶ 5, 20]  For ease, this Court refers to Mr. Joseph.

amount of $143,000." [Doc. 7, ¶ 22] Subsequently, the Lawrences and Plaintiff amended the Purchase Agreement from time to time, including three extensions of the closing date. [Doc. 7, ¶¶ 23, 24, 27-30] With regard to the first extension, it was allegedly necessary "due to a change in employment of the buyer (Defendant Jamie Lawrence) and the lender's requirement to have 30 days post training status paystubs." [Doc. 7, ¶ 24] Plaintiff alleges that he turned down a separate offer (neither the date nor the amount of this offer is alleged) and that he relied on both the Purchase Agreement and the preapproval letter. [Doc. 7, ¶¶ 58, 85] However, when the Lawrences requested yet another extension, Plaintiff conditioned approval "on verification that Defendants Jamie Lawrence and Brenda Lawrence would be able to secure financing." [Doc. 7, ¶ 30] A few days later, on July 26, 2012, Plaintiff learned that the Lawrences were not able to secure financing to purchase the property. [Doc. 7, ¶ 32] On July 31, 2015, Plaintiff received from his realtor a copy of the "Statement of Credit Denial, Termination, or Change" dated May 2, 2012 (the day before the pre-approval letter was sent). [Doc. 7, ¶ 36]

Plaintiff alleges that Mr. Lawrence knew, when he signed the May 1, 2012 Purchase Agreement, that he would not be able to obtain financing. [Doc. 7, ¶¶ 51, 52] Thus, Plaintiff alleges that Mr. Lawrence knowingly made a false statement by signing the Purchase Agreement dated May 1, 2012. [Doc. 7, ¶ 51] Plaintiff alleges that "Brenda Lawrence implicitly joined the purchase agreement when she signed the Counteroffer on May 3, 2012, and explicitly joined when the purchase agreement was amended to add her on May 16, 2012." [Doc. 7, ¶ 72] Indeed, Plaintiff alleges that the Lawrences lacked the

ability to pay for housing and agreed to "several extensions of the closing dates, while knowing full well that they had no prospect of satisfying the terms of the purchase agreement." [Doc. 7, ¶¶ 55, 66] Plaintiff alleges that an individual made an offer to purchase the property on August 5, 2012, for $127,000.00. [Doc. 7, ¶ 47] Plaintiff alleges that this amount would not have covered both the amount he still owed on the property (nearly $123,000.00) and the amount he would have to pay for the real estate agents' commission fee of 6% ($7,620), so he declined the offer. [Doc. 7, ¶ 47] He alleges that the value of the home was so diminished between the Lawrences' May 1, 2012 offer and the August 5, 2012 offer by the unrelated buyer that he was unable to sell the property without suffering a loss. [Doc. 7, 60] Thus, he alleges, the house sat on the rental market for months and was finally rented in February of 2013. [Doc. 7, ¶ 48]

On the above facts, Plaintiff alleges one count of fraud against the Lawrences and one count of breach of the covenant of good faith and fair dealing against the Lawrences. [Doc. 7, pp. 9-12] Plaintiff also sues Legacy Mortgage, LLC and Gabe Joseph for "Aiding and Abetting Fraud" and for "Constructive Fraud" for issuing the preapproval letter though they were "aware that the Defendants Jamie Lawrence and Brenda Lawrence did not qualify for the credit required to purchase" the property. [Doc. 7, ¶¶ 73, 77, 81, 86] As compensatory damages for these claims against the Lawrences, Legacy Mortgage, and Gabe Joseph, Plaintiff asks for an award against all Defendants jointly and severally for $143,000 (the total price due under the Purchase Agreement). [Doc. 7, p. 17(A)] He also asks for punitive damages, his costs in bringing this action,

and such "other and further relief as the Court deems proper under the circumstances." [Doc. 7, p. 17(B), (D), (E)]

In addition, Plaintiff alleges that the Lawrences were negligent in letting a hot tub cover blow away [Doc. 7, ¶ 88] and failing to pay two months' worth of water bills for the property.  [Doc. 7, ¶ 93]  He alleges that the Lawrences committed waste by digging up two Russian sage plants and removing and disposing of a wooden swing set and playhouse.  [Doc. 7, ¶ 99]  Plaintiff alleges that the removal of these items caused the property to diminish in value but he does not allege by how much.  [Doc. 7, ¶ 104]  The total alleged value of the swing set, Russian sage plants, hot tub cover, and unpaid water bills is $1927.97.  [Doc. 7, p. 17(C)]

Procedurally, Defendant Legacy Mortgage, LLC has answered.  [Doc. 13] Defendants Jamie and Brenda Lawrence have moved to dismiss this matter for lack of diversity jurisdiction, arguing that Plaintiff has not alleged the minimum jurisdictional amount in controversy.  [Doc. 18, p. 1]  The Lawrences further move to dismiss Plaintiff's breach of the covenant of good faith and fair dealing claim against them pursuant to Federal Rule of Civil Procedure 12(b)(6).  [Doc. 18, p. 5]

Earlier in this case, Magistrate Judge Stephan Vidmar entered an Order to Show Cause why Defendant Gabe Joseph should not be dismissed for lack of service.  [Doc. 22]  Plaintiff agreed that Mr. Joseph should be dismissed without prejudice [Doc. 29], and thus, the Court herein does so.  Finally, earlier in this case, the parties agreed, and the Court ordered, that discovery be stayed pending resolution of the Lawrences' Motion to Dismiss.  [Doc. 32]

5

Herein, the Court addresses the Lawrences' Motion to Dismiss.

**ANALYSIS**

### *Jurisdiction*

Plaintiff asserts subject matter jurisdiction under 28 U.S.C. § 1332, which requires diversity of citizenship and that "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." The Lawrences have filed a Motion to Dismiss for lack of subject matter jurisdiction on the grounds that the amount in controversy has not been established. [Doc. 18, p. 1]

The Court reviews motions to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). "When a plaintiff invokes federal-court jurisdiction, the plaintiff's amount-in-controversy allegation is accepted if made in good faith." *Dart Cherokee Basin Operating Co., LLC v. Owens*, ___ U.S. ___, 135 S.Ct. 547, 553 (2014).

> It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal. The burden is on the party asserting jurisdiction to show it is not a legal certainty that the claim is less than the jurisdictional amount. A plaintiff's allegations in the complaint alone can be sufficient to make this showing. Although allegations in the complaint need not be specific or technical in nature, sufficient facts must be alleged to convince the district court that recoverable damages will bear a reasonable relation to the minimum jurisdictional floor.

*Adams v. Reliance Standard Life Ins. Co.*, 225 F.3d 1179, 1183 (10th Cir. 2000) (internal quotation marks and citations omitted).

Here, Plaintiff asks for damages on his fraud and breach of the covenant of good faith and fair dealing claims for of the entire amount of the Purchase Agreement, or

$143,000. In cases of fraud or misrepresentation, the victim "may recover 'such damages as are the direct and natural consequences' of the reliance on a fraudulent representation." *Williams v. Stewart*, 112 P.3d 281, 290 (N.M. Ct. App. 2005) (quoting *Indus. Supply Co. v. Goen*, 276 P.2d 509, 512 (N.M. 1954)), *cert. denied*, 113 P.3d 345 (N.M. 2005); *see also* UJI 13-1633 NMRA ("A party is liable for damages proximately caused by [his] [her] fraudulent misrepresentation."). This being a failed sale of property based on an alleged misrepresentation, the proper measure of damages is what Plaintiff would have been entitled to had the sale been consummated, which is also the proper measure of damages for Plaintiff's breach of the covenant of good faith and fair dealing claim. *Hickey v. Griggs*, 738 P.2d 899, 902 (N.M. 1987). In failed purchase agreement cases, "the proper measure of damages is loss of the bargain. . . . The vendor's measure of damages is the difference between the purchase price and the market value of the property at the time of the breach." *Id.* As such, to a legal certainty, Plaintiff is not entitled to the entire $143,000 he alleged, but rather, the difference between the "purchase price" and the market value at the time of the alleged breach.

Plaintiff argues, alternatively, that he is able to meet his burden of establishing the jurisdictional amount in controversy when considering the correct amount of compensatory damages and punitive damages. [Doc. 24, pp. 7-8] Plaintiff claims that the contract price was $143,000. As to the market value of the property, here, there was no subsequent sale of the property. Nonetheless, there was an offer of $127,000, by which this Court can compute the damages which were the direct and natural consequence of the misrepresentation, which would be the difference between the

7

contract purchase price and the market value when Plaintiff learned of the breach.  Based on the allegations in the Complaint, therefore, the damages alleged for fraud and/or breach of the covenant of good faith and fair dealing were $16,000.[3]

The district court must consider punitive damages in determining whether the jurisdictional threshold is met.  *Bell v. Preferred Life Assurance Society of Montgomery, Alabama*, 320 U.S. 238, 242-43 (1943).  The Court concludes that punitive damages would only be available on Plaintiff's fraud claim and potentially his breach of the covenant of good faith and fair dealing claim.[4]  Thus, the Court will not calculate punitive damages based on Plaintiff's claims for negligence (the value of the hot tub cover) or waste (the value of the Russian sage plants and the swing set).  Plaintiff argues that, assuming $16,000 is the proper measure of actual damages, a punitive damages "ratio of 4 to 1 is permissible, to a legal certainty," citing *BMW of North America v. Gore*, 517 U.S. 559, 580-81 (1996).  [Doc. 24, p. 8]  New Mexico law applies to the determination of punitive damages here, *see Vitkus v. Beatrice Co.*, 127 F.3d 936, 941 (10th Cir. 1997) ("A federal court sitting in diversity, as we do here, must apply the substantive law of the forum state."), and New Mexico generally follows *BMW's* analysis

---

[3] This figure does not account for the fact that, under the original Purchase Agreement, Plaintiff would have had to pay $3000 toward the Lawrences closing costs.  [Doc. 7, ¶¶ 17-19]  It is not clear whether this provision was in the final counter-offer that was accepted, and thus, reading the Complaint in the light most favorable to Plaintiff, the Court does not subtract $3000 from the difference between the offer and the value of the property.  *Petrella v. Brownback*, 787 F.3d 1242, 1267-68 (10th Cir. 2015) (the Court "draws all reasonable inferences" from the well-pleaded facts in favor of the plaintiff).

[4] *See, e.g., Romero v. Mervyn's*, 784 P.2d 992, 1000 (N.M. 1989) ("Notwithstanding the general exclusion of punitive damages from contract cases, however, exceptions long have been recognized. *See, e.g., Welborn v. Dixon*, 70 S.C. 108, 49 S.E. 232 (1904) (punitive damages allowed for fraudulent breach of contract).").

in determining whether punitive damages will be allowed.  *Chavarria v. Fleetwood Retail Corp.*, 143 P.3d 717, 728 (N.M. 2006) (considering the following criteria in determining whether a punitive damages award is constitutionally permissible:  "(1) the reprehensibility of the defendant's conduct, or the enormity and nature of the wrong; (2) the relationship between the harm suffered and the punitive damages award; and (3) the difference between the punitive damages award and the civil and criminal penalties authorized or imposed in comparable cases"); *Aken v. Plains Elec. Generation & Transmission Co-op., Inc.*, 49 P.3d 662, 669-672 (N.M. 2002) (relying on *BMW*; discussing the standards in New Mexico for measuring the reasonableness, for due process purposes, of an award of punitive damages).

Our Tenth Circuit[5] has stated that this Court may "take a closer look where punitive damages make up the bulk of the amount in controversy."  *Burrell v. Burrell*,

_____

[5] Though our Tenth Circuit has stated this proposition, the Lawrences rely on several cases from other jurisdictions that make the same point.  [Doc. 27, pp. 2-3]  *See, e.g., Int'l Christian Broad., Inc. v. Koper*, 928 F. Supp. 2d 559, 563 (E.D.N.Y. 2013) (determining that punitive damages are not allowed for misrepresentations made in inducing a relative to issue a loan; thus, because no punitive damages were allowed, the minimum jurisdictional amount in controversy was not present); *OnePoint Solutions, LLC v. Borchert*, 486 F.3d 342, 349-50 (8th Cir. 2007) (holding that the amount in controversy exceeded $75,000 where complaint alleged actual damages for theft of $66,000 and sought statutory punitive damages doubling the amount of the theft); *Zahn v. Int'l Paper Co.*, 469 F.2d 1033, 1034 n.1 (2nd Cir. 1972) (holding that, in a class action, each Plaintiff's claim must amount to more than the jurisdictional amount to result in federal district court subject matter jurisdiction), *abrogated by Exxon Mobil Corp v. Allapattah Servs., Inc.*, 545 U.S. 546, 549 (2005); *McQueen v. Woodstream Corp.*, 672 F. Supp. 2d 84, 87, 89-92 (D.D.C. 2009) (holding that, using the correct measure of damages, the plaintiff was entitled to $15 compensatory damages, and thus concluding that the plaintiff would not be entitled to the 5000 to 1 ratio for punitive damages required to meet the jurisdictional amount in controversy).  After reviewing these cases,

2000 WL 1113702, *2 (10th Cir. 2000) (unpublished decision); *accord Humphreys v. Fuselier*, 1997 WL 579185, *2 (10th Cir. 1997) (unpublished decision).  This does not mean, however, that the Court may freely use its own experience to determine whether this is "the kind of case in which a party would be awarded punitive damages in an amount of approximately three times the amount of compensatory damages," as the Lawrences request this Court to do.  [Doc. 27, p. 5]  That would "require [the] court to improperly look beyond jurisdictional matters and consider the merits of the claims." *Frederick v. Hartford Underwriters Ins. Co.*, 683 F.3d 1242, 1248 n.4 (10th Cir. 2012). Thus, the proper inquiry is, when considering only the legally permissible damages, whether it is possible that the Plaintiff could recover damages sufficient to meet the jurisdictional threshold.  *See id.*; *Burrell*, 2000 WL 1113702 at *3 ("We find no need to conduct a mini-trial to approximate the value of a punitive damage award. Burrell has not only pled the elements of fraud and deceit, but he has alleged that appellees' conduct was fraudulent to substantiate his claim of punitive damages[;]" and concluding that the punitive damages award necessary to meet the jurisdictional threshold was constitutionally reasonable).  Here, Plaintiff relies on less than a 4 to 1 punitive-damages-to-alleged-compensatory-damages ratio, and such damages are permissible under New Mexico law.  *See Chavarria*, 143 P.3d at 729 (stating that there must be flexibility in determining punitive damages and that generally a case awarding punitive damages with a single-digit ratio to compensatory damages are reasonable). Thus, the Court concludes

---

the Court concludes that the controlling precedent adequately addresses the matter and resort to these cases is unnecessary.

that it is not a legal certainty that Plaintiff will not be able to recover the amount of

punitive damages required to meet the jurisdictional threshold.

Finally, the Lawrences argue Plaintiff has produced no evidence that they knew

they would not be able to obtain financing.   [Doc. 27, pp. 4-5]   Neither party here

produced evidence, and it was not until after briefing was complete in this case that the

United States Supreme Court made it clear that parties may do so.  *See Dart Cherokee*,

135 S.Ct. at 554.   Nonetheless, Plaintiff's allegations alone, when assumed to be true,[6]

suffice to establish that Plaintiff's fraud claim supports a claim for punitive damages.

While it remains to be seen whether Plaintiff can establish as much, Plaintiff's allegations

paint the following picture:  the Lawrences were staying, rent free, in Plaintiff's home

[Doc. 7, ¶ 9]; when Plaintiff declined their request to let them stay in the home rent-free

for up to three more months (until July 31, 2012) [Doc. 7, ¶ 14], the Lawrences hatched a

scheme to fraudulently induce Plaintiff into allowing them to stay in the home rent free

for the remaining three months [Doc. 7, ¶¶ 17, 52-57]; in executing this scheme the

Lawrences made false representations to Plaintiff (via the pre-approval letter) concerning

their financial ability to purchase the home, on which Plaintiff relied [Doc. 7, ¶¶ 51-52,

58]; the Lawrences, with the help of Legacy Mortgage, LLC and Gabe Joseph, induced

Plaintiff to believe that they would be approved for a loan, despite knowing that they had

already been denied the necessary credit [Doc. 7, ¶¶ 72-77]; and the Lawrences allowed

Plaintiff to continue to believe these representations, causing Plaintiff to not seek other

---

[6] Unlike at trial, at this stage of the litigation the Court must assume that the well-pleaded
factual allegations in the Complaint are true.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678
(2009).

buyers for the property [Doc. 7, ¶¶ 24-29, 85] though it was diminishing in value [Doc. 7, ¶ 60]. Given these allegations, the Court cannot say to a legal certainty that a reasonable jury would not award punitive damages at approximately a 4 to 1 ratio in this case. *Adams,* 225 F.3d at 1183 (stating that the burden is on the party asserting jurisdiction to show that "it is not a legal certainty that the claim is less than the jurisdictional amount"). Plaintiff has satisfied his duty to plead facts which establish the jurisdictional amount in controversy.

### Failure to State a Claim

A court will dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). For decades, Rule 12(b)(6) motions were governed by a test taken from *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957): a complaint was subject to dismissal pursuant to Rule 12(b)(6) only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Conley*, 355 U.S. at 45 46) (internal quotation marks omitted). In *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 570 (2007), the Court retired Conley's test, replacing it with a new standard: "to withstand a motion to dismiss, a complaint must have enough allegations of fact, taken as true, 'to state a claim to relief that is plausible on its face.'" *Collins*, 656 F.3d at 1214 (quoting *Twombly*, 550 U.S. at 570)). In applying this standard, a court accepts as true all "plausible, non-conclusory, and non-speculative" facts alleged in the plaintiff's complaint. *Shrader v. Biddinger*, 633 F.3d 1235, 1239 (10th Cir. 2011) (internal quotation marks and citation omitted). The Court "draws all

reasonable inferences from those facts in favor of the plaintiff." *Petrella,* 787 F.3d at 1267-68.   However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Moreover, "'a formulaic recitation of the elements of a cause of action' will not suffice; a plaintiff must offer specific factual allegations to support each claim" that "'raise a right to relief above the speculative level." *Collins*, 656 F.3d at 1214 (quoting *Twombly*, 550 U.S. at 555).  In short, in ruling on a 12(b)(6) motion, "a court should disregard all conclusory statements of law and consider whether the remaining specific factual allegations, if assumed to be true, plausibly suggest the defendant is liable." *Collins*, 656 F.3d at 1214.

In their *Motion to Dismiss,* the Lawrences' entire argument for dismissal of Plaintiff's claim of breach of the covenant of good faith and fair dealings is as follows:

> Plaintiff also contends that Defendants Lawrence breached the implied covenant of good a faith and fair dealing. First, he contends that Defendants had a duty to enter into the purchase contract in good faith. First Amended Complaint, Doc. 7, ¶ 65. The implied covenant of good [] faith and fair dealing, of course, applies to the performance and enforcement of the contract, *Continental Potash, Inc. v. Freeport-McMoran, Inc.*, 115 N.M. 690, 706, 858 P.2d 66, 82 (1993), and it does not apply to conduct before the contract was entered into, *Azar v. Prudential Life Ins. Co.*, 2003-NMCA-062, ¶ 53, 133 N.M. 669, 68 P.3d 909. This claim accordingly fails to state a claim upon which relief can be granted and should be dismissed pursuant to Fed.R.Civ.P. 12(B)(6).

[Doc. 18, p. 5]

As described above, Plaintiff alleges that, after the contract was formed, the Lawrences "concluded several extensions of the closing dates, while knowing full well that they had no prospect of satisfying the terms of the purchase agreement."  [Doc. 7,

¶ 66]  Given the allegation that the Lawrences sought extensions after the contract was made, knowing that they would not be able to obtain financing, Plaintiff has stated a claim that there was a violation of the covenant of good faith and fair dealing.  *See Azar*, 68 P.3d at 927 (stating that the covenant of good faith and fair dealing "requires the existence of an underlying contract and may not be used to override the express provisions of an integrated, written contract").  Accordingly, the Lawrences' motion to dismiss Plaintiff's claim for breach of the covenant of good faith and fair dealing must be denied.

**CONCLUSION**

For the foregoing reasons, the Court **DENIES** *Jamie Lawrence and Brenda Lawrence's Motion to Dismiss*.  [Doc. 18]

Furthermore, Mr. Joseph is **DISMISSED** as a party without prejudice.

SO ORDERED this 11th day of September, 2015 in Albuquerque, New Mexico.

M. CHRISTINA ARMIJO
Chief Judge, United States District Court

14